Mary W. Vaughn

*v.*

Edward B. Newman *et al.*

*Opinion filed April 17, 1906—Rehearing denied June 13, 1906.*

1. JUDICIAL SALES—*when master may require cash deposit to secure bid.* Where the successful bidder at a master's sale fails to make good her bid within the twenty days allowed by the master, thus necessitating another sale, if the same person is the highest bidder at the second sale the master may require her to put up a cash deposit at once to secure her bid, the terms of the sale provided for in the decree being cash in hand on day of sale, and in default of her doing so may re-sell the property to another bidder.

2. SAME—*when party cannot complain that one-half of the corn growing on premises was sold.* Where, at the time a bill for partition is filed, the land is occupied without a lease by one of the tenants in common, who plants a crop of corn with full knowledge that the

partition sale is to be held within a few days, the land may be sold with the growing corn if the decree is silent as to crops, none having been planted at the time it was rendered, and the occupying cotenant has no cause for complaint because the master reserved one-half of the crop for her and sold one-half with the land.

APPEAL from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

HUBBARD & MANNY, for appellant.

MATTHEWS & ANDERSON, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

At the April term, 1905, of the circuit court of Pike county, Edward Newman filed a bill against Mary W. Crane and others for partition of certain lands situate in that county. A decree of sale was rendered, and on May 22, 1905, the master in chancery sold the lands to Mary W. Crane (afterwards Mary W. Vaughn, the appellant in this case,) for $10,150. She failed to pay the purchase price, or any part thereof, to the master, which fact was reported to the court, and on July 1, 1905, a re-sale was ordered. The master re-advertised the property, and on August 1, 1905, sold it to Benjamin Newman for $9200. On August 3, 1905, the master filed his report of sale. Within twenty days thereafter appellant filed her objections to the approval of the sale, which objections were overruled, from which order she has prosecuted her appeal to this court.

Objection is first made to the manner in which the sale was advertised, it being insisted that there is no proof that the notices which were posted before the sale were in the most public places in the vicinity of the land; also that there is no proof that the notices posted in the vicinity of the land were posted twenty-one days before the sale.

The provisions of the decree as to the notices were as follows: "Said special commissioner will first give notice of said sale by causing a notice, containing the time, terms and

221—37

place of sale, together with a particular description of the premises to be sold, to be published for at least twenty-one days in some public newspaper of general circulation of Pike county, Illinois, printed and published weekly in Pike county, Illinois, and by causing printed notices of said sale to be posted in at least five of the most public places in the vicinity where said premises are situated." There is no dispute but that a notice containing the time, terms and place of sale, together with a description of the premises to be sold, was published for four successive weeks in the *Pike County Times*, a weekly newspaper of general circulation published in the city of Pittsfield, the first publication being on July 7, 1905, and the last publication on July 28, 1905. This publication was in strict conformity with the provisions of the decree and no point is made as to it, but the sole complaint is as to the notices which the decree required to be posted. The report of the master as to the notices posted, after reciting the publication, was as follows: "And by causing printed copies of said notices to be posted in at least five of the most public places in said county in the vicinity where said premises are situated." Upon the hearing of the objections before the court the master testified that he posted a copy of the notices, personally, in the Farmers' State Bank of Pittsfield on July 8, one in the circuit clerk's office in Pittsfield on the same day, and one in the livery stable of John Allan Smith on the same day. He also sent one notice to the Farmers' State Bank of Pittsfield and saw it posted the first of the following week. On Sunday, July 9, he posted a number of notices on the road to Hadley,—one at Preble's cross-roads, which was about a mile from the post-office at New Salem; one at the Girard place, about two miles from the Preble cross-roads; one at the corner of Col. Bailey's lot in New Philadelphia, and one on the bulletin board at the post-office in Baylis. All of these notices were posted twenty-one days before the sale. He also testified that on July 7 he mailed notices to C. B. Newman, to the Griggsville National Bank

and to the Illinois Valley Bank, and requested that they be posted; that on July 8 he mailed a copy to Mr. Ackright, at Tempest, Illinois; Powell Bros., at Fish Hook, Illinois; Dan Cover, at New Salem, Illinois; George Crump, at New Salem, Illinois; W. R. Hooper, at New Salem, Illinois; Boyd Johnson, at New Salem, Illinois; Weber Grammer, at Baylis, Illinois; Rufus Grammer, post-master at Baylis, Illinois; Orville Whitmore, at Tempest, Illinois; Ed. Corey, at Tempest, Illinois; Perry State Bank, at Perry, Illinois; J. E. Morton, at Perry, Illinois; and also other notices to various parties in Mason county, Illinois. Other witnesses were called who testified to seeing some of these notices posted at the places specified by the master.

When a decree of sale specifies the manner in which the notices are to be posted by the master, it becomes his duty, in order to make a valid sale, to post the notices in the manner specified by the decree. The evidence shows that he not only complied with the decree, but also sent these various notices in addition to the ones required, and it is apparent from the sale that there was full and complete knowledge of those interested as to the time, place and terms. There is no question raised but that the price obtained for the land was adequate, as it was within $800 of the full appraised value as made by the commissioners. For these reasons we think the court committed no error in overruling this objection.

It is next complained that the master did not comply with the terms of the decree, in that he required the purchaser to put up $1000 in cash to secure the bid. The terms of sale provided in the decree were cash in hand on the day of sale. The record shows that on the first sale the premises were struck off to the appellant. She was given twenty days after the sale in which to make payment, and wholly failed and refused to make good her bid. At the second sale she again became a bidder and the premises were struck off to her for the sum of $9500. The master then told her that before he would finally declare her to be the successful bidder she must

put up the sum of $1000 or secure the same, and upon her failure so to do that he would re-offer the premises, and he requested the other bidders to remain until she had. decided what she would do. She again failed or refused to put up the $1000 or in any way secure her bid. Upon this failure or refusal the master again offered the premises, and sold them for $9200 to the present purchaser, Benjamin Newman. We do not see how appellant has any cause for complaint as to this action of the master. In the light of his past experience with her it certainly was his duty to protect *bona fide* bidders against one who was bidding without funds and who was in no way able or willing to comply with her bid. The second sale was necessitated by her default, and it was the duty of the master to see that the default of the first sale was not repeated in the second.

Complaint is also made of the action of the master in selling one-half of the corn growing upon the land. The bill for partition was filed in April and the first sale was made on May 22. At the time the bill was filed the premises were occupied by appellant, and the crop of corn was planted just a few days before the first sale, and at that time appellant knew that the premises were to be sold within a few days. There is no evidence that she had any lease upon them, or any other claim to them other than her rights as a tenant in common. At the time the decree of sale was rendered no crops had been planted, and therefore the decree was silent as to the disposition of any corn which might subsequently be planted. Under this state of facts the land might have been sold and the corn growing on the land have been conveyed to the purchaser, (*Talbot* v. *Hill,* 68 Ill. 106,) but, on the contrary, one-half of it was reserved by. the master and given to appellant. By this act she received more than she was entitled to and will not now be heard to complain.

The court properly overruled appellant's objections to the approval of the report of sale, and the decree will be affirmed.

*Decree affirmed.*